Angel CORTINA, Jr., Chida Cortina, Donald Mothner, and Cynthia Mothner, Plaintiffs,

v.

SOVRAN BANK, N.A., Edward D.G. Davies, and John S. Tyres, Defendants.

RESOLUTION TRUST CORPORATION, Intervenor–Plaintiff,

v.

NATIONSBANK OF VIRGINIA, N.A., Angel Cortina, Jr., Chida Cortina, Donald Mothner and Cynthia Mothner, Defendants.

David L. PAUL and Sandra A. Paul, Plaintiffs,

v.

SOVRAN BANK, N.A., Edward D.G. Davies, and John S. Tyres, Defendants.

RESOLUTION TRUST CORPORATION, Intervenor–Plaintiff,

v.

NATIONSBANK OF VIRGINIA, N.A., Warren Stamm, David L. Paul, and Sandra R. Paul, Defendants.

Nos. 91–2896–CIV, 91–2852–CIV.

United States District Court, S.D. Florida.

Sept. 21, 1994.

Ralph Carlos Rocheteau, III, Miami, FL, for Angel Cortina, Jr., Chida Cortina, Donald Mothner and Cynthia Mothner.

Raul A. Arencibia, Bailey, Hunt, Jones & Busto, P.A., Miami, FL, for Davil L. Paul and Sandra R. Paul.

Stephen N. Zack, Zack Hanzman Pnce Tucker Korge & Gillespie, P.A., Miami, FL, Candace Fabri, Sachnoff & Weaver, Ltd., Chicago, IL, Sara Nelson Bloom, Resolution Trust Corporation, Washington DC, for Resolution Trust Corporation.

Richard Blackburn Adams, Jr., Miami, FL, for Sovran Bank, N.A. and Nationsbank of Virginia, N.A.

Carlos Concepcion, Coral Gables, FL, for Warren Stamm.

## ORDER AFFIRMING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HIGHSMITH, District Judge.

THIS CAUSE comes before the Court upon the Report and Recommendation of the Honorable Stephen T. Brown, United States Magistrate Judge, on the Intervenor–Plaintiff's Motion for Summary Judgment on Counts I and II of its Amended Complaint in Intervention in Case No. 91–2852–CIV–HIGHSMITH (DE # 35), and on its Motion for Summary Judgment on Counts I, II and III of its Amended Complaint in Intervention in Case No. 91–2896–CIV–HIGHSMITH (DE # 27).

The Court agrees with Magistrate Judge Stephen T. Brown's Report and Recommendation.

Accordingly, having reviewed, *de novo,* the Magistrate Judge's Report and Recommendation, dated August 24, 1994, and the record, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that the above-mentioned Report and Recommendation of Magistrate Judge Brown be RATIFIED, AFFIRMED, and made the Order of the District Court. Intervenor–Plaintiff's motions for partial summary judgment (DE #35 in Case No. 91–2852 and DE #27 in Case No. 91–2896) are GRANTED. Pursuant to *Fed.R.Civ.P.* 58, Partial Final Summary Judgment shall be entered under separate order. It is further

ORDERED AND ADJUDGED that CenTrust Bank is hereby deemed insolvent and bankrupt for purposes of these proceedings. Accordingly, all Trust assets shall be held for CenTrust's creditors, and all assets of the Trust shall revert to Intervenor–Plaintiff Resolution Trust Corporation for the benefit of CenTrust's general creditors.

DONE AND ORDERED.

## REPORT AND RECOMMENDATION

BROWN, United States Magistrate Judge.

This cause is before this court on Intervenor–Plaintiff Resolution Trust Corporation's

("RTC") Motion for Summary Judgment on Counts I and II of its Amended Complaint in Intervention, and on Intervenor–Plaintiff Resolution Trust Corporation's ("RTC") Motion for Summary Judgment on Counts I, II and III of its Amended Complaint in Intervention, both filed May 3, 1994, pursuant to an Order of Reference from the Honorable Shelby Highsmith, United States District Judge. This court has reviewed the motions, the responses, the replies, the notices of supplemental authority, responses and replies thereto, and all pertinent portions of the record.

### FACTS

These actions arose out of the failure of CenTrust Bank ("CenTrust") in February, 1990. On or about December 12, 1986, Centrust adopted a Supplemental Executive Retirement Plan ("SERP")[1] and authorized, as grantor of the SERP, the establishment of a "rabbi" trust ("the Trust"), to serve as a vehicle through which benefits accrued under the SERP would be paid. A rabbi trust is an irrevocable grantor trust whose assets are subject to the claims of general creditors upon the grantor's insolvency. The federal tax laws condition the favorable tax treatment of a rabbi trust on the requirement that the trust funds remain subject to the claims of the employer's creditors as if the assets were the general assets of the employer. Contributions of assets into the SERP trust for the benefit of participants are not taxable to the participants until they actually receive payment from the trust.

Centrust submitted the SERP Trust Agreement ("Trust Agreement")[2] to the Internal Revenue Service ("IRS") in order to obtain a ruling that the SERP Trust was a valid and enforceable rabbi trust and that,

therefore, SERP participants would recognize no income under the SERP unless and until they were in actual receipt of their benefits. On October 22, 1987, as supplemented on January 6, 1988, the IRS issued a private letter ruling to the effect that the Trust constituted a valid and enforceable rabbi trust.[3]

As of December 31, 1992, the Trust contained approximately $4.2 million in assets. Angel Cortina, Jr. ("Cortina"), Donald Mothner ("Mothner") and David Paul ("Paul") (collectively, "the Plaintiffs"), plaintiffs in the underlying actions and defendants in RTC's Amended Complaints in Intervention, are SERP "participants" as defined in the SERP.[4]

On or about February 2, 1990, the United States Office of Thrift Supervision ordered CenTrust closed for unsafe and unsound banking practices and the RTC was appointed conservator. On or about March 9, 1990, RTC was appointed receiver of CenTrust. In 1991, Paul, Cortina and Mothner filed these actions against Sovran Bank, N.A. (now NationsBank), Edward D.G. Davies and John S. Tyres, seeking a distribution of SERP Trust assets and claiming breach of fiduciary duty by the trustees.[5] RTC intervened in the actions and brought these motions for summary judgment.

RTC's Amended Complaint in Intervention as to David Paul (Case No. 91–2852–cv–Highsmith) contains four counts, all related to the SERP. RTC has moved for summary judgment as to Counts I and II. Count I seeks a declaration that CenTrust is "bankrupt" for purposes of the Trust Agreement, and an order that all assets of the Trust must revert to RTC for the benefit of CenTrust's general creditors. Count II seeks a declara-

---

1. A copy of the SERP is attached as Exhibit B to the RTC's Memorandum in Support of its Motion for Summary Judgment. Unless otherwise stated, all "Exhibits" referenced are attached to RTC's Memorandum in Support of its Motion for Summary Judgment.

2. Exhibit C.

3. The ruling was expressly conditioned on the enforceability under federal and state law of the SERP Trust Agreement provision requiring the

use of SERP Trust assets to satisfy the claims of CenTrust's general creditors.

4. Chida Cortina, Cynthia Mothner and Sandra Paul are these plaintiffs' respective wives, and are "contingent participants" under the SERP in the event of the plaintiffs' deaths.

5. NationsBank is presently trustee of the SERP Trust, succeeding Davies and Tyres. Warren Stamm ("Stamm") was subsequently appointed as an additional trustee of the SERP Trust.

tion that CenTrust is insolvent and an order that all Trust assets must be held for Cen-Trust's creditors.

RTC's Amended Complaint in Intervention as to Cortina and Mothner (Case No. 91–2896–cv–Highsmith) contains five counts, all related to the SERP. RTC has moved for summary judgment as to Counts I, II and III. Count I seeks a declaration that under the terms of the SERP, Mothner and Cortina have neither a present nor future entitlement to SERP benefits because they cannot meet the SERP's eligibility requirements. Counts II and III seek the declarations sought in Counts I and II, respectively, of the Amended Complaint in Intervention against Paul.

## DISCUSSION

### I. STANDARD ON MOTION FOR SUMMARY JUDGMENT

A summary judgment is proper only if the record before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp., supra* at 322–23, 106 S.Ct. at 2552.

In evaluating whether a party has met this burden, the court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all reasonable infer-

ences in its favor. *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir.1991); *Joplin v. Bias*, 631 F.2d 1235 (5th Cir.1980). However, only disputes over facts that are relevant to the outcome of the lawsuit are proper to be considered to preclude the entry of summary judgment. Irrelevant disputes do not matter. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, the court must consider whether there are any genuine issues of material fact that must be submitted to a finder of fact because it is reasonable to conclude that they may be resolved in favor of either party. *Id.*

### II. WHETHER CORTINA AND MOTH-NER'S EMPLOYMENT WAS TER-MINATED AFTER A "CHANGE OF CONTROL" OCCURRED AT CEN-TRUST SUCH AS TO ALLOW THEM TO RECEIVE SERP BENE-FITS

RTC maintains that Cortina and Mothner are not now and never will be eligible to receive SERP benefits. The SERP provides that if a SERP participant's (other than the Chairman, David Paul) employment is terminated prior to his or her "Normal Retirement Date," he or she is not eligible to receive benefits until and unless his or her employment is terminated on or after attaining his or her "Early Retirement Date." (SERP §§ 1.9, 1.11, 1.14, 3.2, 3.3). The "Early Retirement Date" for all participants other than the Chairman is the date on which the participant (1) has attained age 57 and (2) has completed at least fifteen (15) years of "Continuous Service"[6] of which at least ten (10) years must be "Future Service." (SERP, § 1.9). "Future Service" is defined as "[t]he portion of a Participant's Continuous Service completed after his Plan participation starts." (SERP, § 1.10)

Cortina's and Mothner's employment at CenTrust terminated on or about February 5, 1990. The RTC has asserted (and no one has contested) that Cortina's "Normal Retirement Date" would be September 21, 1997 and his "Early Retirement Date" would be

---

6. SERP, § 1.8.

September 21, 1996, and that Mothner's "Normal Retirement Date" would be March 16, 2005, and his "Early Retirement Date" would be March 16, 1999, provided they had been employed by CenTrust through those dates.

It is undisputed that neither Cortina nor Mothner have met the requirements of Continuous Service in order to receive benefits under the SERP. However, Cortina and Mothner claim entitlement pursuant to § 3.6 of the SERP as a result of an alleged "change of control of CenTrust on February 2, 1990." Section 3.6 of the SERP provides:

> 3.6 *Change of Control.* In the event that a Participant's employment terminates within two years after a Change of Control Event, and if the Participant has not then otherwise satisfied the conditions for a benefit under Sections 3.2, 3.3, 3.4 or 3.5, the Company shall pay the Participant a monthly benefit starting on the first of the month after his 57th birthday (with respect to the Chairman, his 55th birthday) and ending with the payment for the month in which his death occurs ... For purposes of this Section 3.6, a "Change of Control Event" means the acquiring, after August 10, 1986, by any person or group of the beneficial ownership of 20% or more of the Company's voting securities, but only if the Board subsequent to such acquisition expressly designates such acquisition as "not approved" for purposes of this Plan.

SERP, § 3.6.

RTC argues that the events constituting a "Change of Control Event" as defined in the Agreement, never occurred. In support of this argument, RTC has filed the affidavit of David Kunstler, a member of CenTrust's Board of Directors from November 1984 through February, 1990, who states that he has no recollection that the Board ever designated any acquisition of CenTrust's voting securities as "not approved" for purposes of the SERP. (Affidavit of David Kunstler, Exh. A). Additionally, RTC states that it is not aware of any instance since CenTrust was closed in which any person or group acquired 20% or more of CenTrust's voting securities, and that it has not declared any

such acquisition "not approved." (Affidavit of William M. Dudley, Exh. I).

In opposition, Mothner and Cortina argue that "it defies common sense to assert that the seizure [by RTC] was not a change of control," citing 12 U.S.C. § 1821. Although the RTC's being appointed Receiver may have constituted a change of control as that phrase is commonly understood, the drafters of the SERP gave a specific and unambiguous definition to that term—one which includes events which have undisputedly not occurred. This court finds that no ambiguity exists with respect to that provision, and therefore, this court must accept the definition supplied by the drafters. *See, e.g., International Brotherhood of Boilermakers v. Local Lodge D111 of Cement, Lime, Gypsum and Allied Workers Div. of the International Brotherhood of Boilermakers,* 858 F.2d 1559, 1561 (11th Cir.1988), *cert. denied,* 490 U.S. 1047, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989); *Orkin Exterminating Co., Inc. v. F.T.C.,* 849 F.2d 1354, 1360 (11th Cir.1988), *reh'g. denied,* 859 F.2d 928, *cert. denied,* 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989) (where language of contract is unambiguous, legal effect of language is a question of law).

Accordingly, this court finds that RTC is entitled to summary judgment on Count I of its Amended Complaint in Intervention against Cortina and Mothner, in that no "Change of Control" of CenTrust, as it is defined in the SERP Agreement, occurred, and Cortina and Mothner cannot satisfy the Continuous Service requirements called for under the SERP.

### III. *SHOULD CENTRUST BE CONSIDERED TO BE "BANKRUPT" SUCH THAT SERP ASSETS ARE SUBJECT TO THE CLAIMS OF THE GENERAL CREDITORS*

█ Plaintiffs have not raised any issue of fact concerning the Trust's qualification as a "rabbi" trust. Federal tax law conditions the beneficial tax treatment of a rabbi trust on the requirement that the trust fund remains subject to the claims of the employer's creditors as if the assets were the general assets of the employer. *See, Goodman v. Resolution Trust Corp.,* 7 F.3d 1123 (4th Cir.1993),

*citing Mertens Law of Federal Income Taxation,* § 25B.212 (1988); *Mertens Law of Federal Income Taxation,* § 25B.212 (1988) ("In reality, the recipient receives only the company's unsecured promise to pay benefits and has no right against any assets other than the rights of a general unsecured creditor of the company, ... The employer will be treated as the owner of the trust.")

Section 13 of the Trust Agreement provides:

> (b) The Chief Executive Officer and the Board of Directors of the Grantor shall promptly notify or cause to be notified the Trustee if at any time the Grantor becomes insolvent or is named as debtor in a pending proceeding under the United States Bankruptcy Code. For purposes of this Section 13, the Grantor will be deemed "insolvent" if at any time it is unable to pay its debts as they mature.
>
> (c) The Trust shall be subject to the claims of the general creditors of the Grantor in accordance with the provisions of this Section 13(c). If at any time the Trustee shall receive notice pursuant to Section 13(b) hereof, or if at any time the Trustee shall by any other means become aware that the Grantor has been named as debtor in a pending proceeding under the United States Bankruptcy Code, the Trustee shall refrain from making any distributions pursuant to Section 3 hereof and shall hold the assets of the Trust for the benefit of the general creditors of the Grantor (including, without limitation, the Participants) and shall deliver Trust assets to satisfy such claims in the manner and to the extent that a court of competent jurisdiction may direct.

SERP, § 13.

■ The RTC argues that the portion of Section 13(c) which reads "Grantor has been named as debtor in a pending proceeding under the United States Bankruptcy Code" should be broadly construed to encompass CenTrust's becoming the subject of receivership, in that Section 109 of the Bankruptcy Code explicitly excludes savings and loan institutions such as CenTrust from the definition of "debtor" under the Bankruptcy Code. *See* 11 U.S.C. § 109. Rather, finan-

cial institutions are liquidated pursuant to receivership under the federal banking statutes, including the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq.,* and the Federal Home Loan Bank Act, 12 U.S.C. § 1421 *et seq.,* as amended by FIRREA. RTC argues that because CenTrust could not have sought protection under the bankruptcy laws, the provision in the Trust Agreement referring to "debtor in a pending proceeding under the United States Bankruptcy Code" can have meaning only if CenTrust's status in receivership is deemed to be equivalent to that of a debtor under the Bankruptcy Code.

In *Goodman v. Resolution Trust Corp., supra,* the trial court was faced with a situation which has certain factual similarity to the instant case. In that case, the OTS had placed Yorkridge–Calvert Savings and Loan Association ("Yorkridge") into receivership for unsafe and unsound banking practices and had appointed RTC as receiver. Certain of Yorkridge's former directors sued to recover funds held in rabbi trusts pursuant to deferred compensation agreements that were entered into prior to Yorkridge's failure. The plaintiffs and the RTC moved for summary judgment, seeking a declaration of entitlement to the assets of the trust.

The trial court determined that section 3.1 of the Trust Agreement, which provided that "the Trust Fund shall at all times be subject to the claims of creditors of Employer during both the operation period of the Employer or in the event of Employer's insolvency or bankruptcy" should be read to include Yorkshire's receivership. The Fourth Circuit Court of Appeals, in recognizing that "contract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage," affirmed, stating

> The reference to "bankruptcy" in the Trust Agreements is an obvious misnomer since the Federal Bankruptcy Code specifically excludes banks, saving and loan associations, and other financial institutions from its definition of debtors eligible to seek protection under the Bankruptcy Code. *See* 11 U.S.C. § 109. If the term "bankruptcy" were narrowly construed to ex-

clude the receivership of Yorkridge, then the term in the Trust Agreements would be devoid of meaning since Yorkridge could never file for bankruptcy.

*Goodman* at 1127.

Paul attempts to distinguish the *Goodman* case on several bases. This court finds that certain of these points merit discussion. Paul argues that contrary to the reasoning of the *Goodman* court with respect to Yorkridge, CenTrust *could* have become bankrupt if it ceased to receive customer deposits, and that in the fall of 1989, CenTrust proposed a bifurcation plan in which one of the entities would have ceased accepting customer deposits and would have become eligible for bankruptcy. However, as RTC points out, the proposed bifurcation plan to cease receiving customer deposits would have changed the status of CenTrust as a savings and loan.

Rather than examine the status of CenTrust at the time of its closing, as RTC suggests, this court finds that the question is whether the term "debtor in a Bankruptcy Proceeding" had any meaning with respect to CenTrust's status at the time the Trust Agreement was drafted. Paul has not presented *any evidence that it would have.* This court agrees with the analysis of the *Goodman* court, and finds that the only way to avoid the bankruptcy provision from being meaningless as of the time the Trust Agreement was drafted is to equate bankruptcy with receivership. *See, e.g., Jacksonville Branch, N.A.A.C.P. v. Duval County School Board,* 978 F.2d 1574, 1582 (11th Cir.1992) ("Courts must try to give effect to each provision in a contract or consent agreement."); *see also, Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Financial Corp.,* 302 So.2d 404, 407 (Fla.1974) ("[i]n the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion, and apparent object of the parties, to determine the meaning and intent of the language employed.")

Plaintiffs make several counter arguments in the event "bankruptcy" can be read to encompass receivership. First, Plaintiffs maintain that the SERP was "effectively terminated" due to alleged action on the part of RTC in discontinuing the operation of CenTrust as a going concern. This court rejects that argument. In the first instance, the case cited by Paul in support of his position, *Berard v. Royal Electric, Inc.,* 795 F.Supp. 519 (D.R.I.1992) does not necessarily support the proposition of "effective termination" by a company's cessation of business. Rather, as the RTC correctly points out, the issue was when an undisputed termination should be deemed to have occurred. Plaintiffs have presented no evidence that the CenTrust Board of Directors or the RTC ever took any action to terminate the SERP pursuant to § 6.5. Rather, in footnote 16 of his opposing memorandum, Paul states

> The RTC could have repudiated the SERP and SERP Trust Agreement under 12 U.S.C. § 1821 thus relieving itself of all contractual obligations thereunder—it has instead chosen not to repudiate thereby leaving all its contractual obligations under these contracts intact.

(Paul Memo of Law at 11). Plaintiffs' "effective termination" is not supported by any evidence of record and is therefore rejected.

Next, Paul argues that his demand for payment on February 23, 1990, which preceded the RTC's receivership and notice of insolvency should preempt the RTC's claim. However, Paul has not provided any evidence that he had met any of the criteria of entitlement under any section of the SERP, to wit: (1) employment with CenTrust to at least age 60 (SERP, § 3.2); (2) employment with CenTrust to at least age 55 if he had also completed three years of service after August 10, 1986 (SERP, § 3.3); (3) attainment of his designated early retirement, age 55, even if his employment terminated prior to that date, but only if he completed ten years of service with at least three of those years occurring after August 10, 1986 (SERP, § 3.4); or (4) termination of employment because of disability (SERP, § 3.5).[7] Therefore, this court finds that

---

7. This court would further note that even if the

Plan had been "effectively terminated" as Paul

Paul's demand does not preempt the RTC's claim.

■ Next, Plaintiffs argue that the RTC failed to give "prompt" notice, by certified mail, of CenTrust's receivership and/or insolvency. This court will discuss insolvency later in this Report. However, with respect to the receivership, although § 13(b) provides that the Board of Directors shall "promptly give notice" of insolvency and/or bankruptcy, § 13(c) provides "[i]f at any time the Trustee shall receive notice pursuant to Section 13(b) hereof, *or if at any time the Trustee shall by any other means become aware that the Grantor has been named as debtor in a pending proceeding under the United States Bankruptcy Code*", the Trustee shall refrain from making any distributions, shall hold the assets of the Trust for the benefit of the general creditors, and shall "deliver Trust assets to satisfy such claims in the manner and to the extent that a court of competent jurisdiction may direct." (emphasis added)

A reading of § 13(c) makes it clear that unlike in the case of insolvency, even if "prompt" notice of bankruptcy (i.e. receivership) is not given, the Trustee is required to refrain from making distributions and shall hold the assets for the benefit of the general creditors if the Trustee "shall by any other means become aware that the Grantor has been named as debtor in a pending proceeding under the United States Bankruptcy Code." There does not appear to be any dispute that the Trustees are aware of the receivership. Accordingly, this argument is without merit.[8]

Based on the foregoing, this court finds that RTC is entitled to summary judgment on Count I of its Amended Complaint against Paul and on Count II of its Amended Complaint against Cortina and Mothner.

## IV. *INSOLVENCY*

■ In Count II of its Amended Complaint against Paul (Count III against Cortina and Mothner) RTC argues that it is entitled to summary judgment due to CenTrust's alleged insolvency.

Under § 13(b) CenTrust is deemed insolvent if "at any time it is unable to pay its debts as they mature." There does not appear to be any issue that CenTrust is currently insolvent. *See* Affidavit of Karla L. Guldner, Exhibit J of RTC's Memorandum in Support of Summary Judgment. Plaintiffs argue that there is an issue of fact as to whether CenTrust was insolvent as of February 1990, the date the RTC was appointed as conservator. This court agrees with RTC that insolvency as of that date is irrelevant, and that the issue is whether CenTrust is currently insolvent, which is undisputed. The only evidence Plaintiffs have supplied with respect to CenTrust's insolvency after February, 1990 is a January 12, 1990 memorandum of Robert W. McMullen, audit partner in the firm of Price Waterhouse, which states that "absent regulatory intervention, the bank could continue to operate for at least a year without problems of meeting its obligations as they become due." This court finds that this submission fails to raise an issue of fact as to whether CenTrust ultimately became insolvent.[9]

■ Plaintiffs further argue that if CenTrust did become insolvent, RTC has failed to proffer any evidence that prompt notice was given to the Trustees of insolvency, in that RTC was appointed Receiver as of March 9, 1990, and the Receiver did not give notice of insolvency to the SERP Trustee until May 3, 1990. This court finds merit in the RTC's argument that Paul has no standing to raise the notice provision as a bar to RTC's right to the proceeds because the

---

argues, that termination would not change the date of entitlement to benefits, but rather only would affect the amount of benefits to be paid. SERP, § 6.5.

8. This court would note that if Paul arguably had a right to the Trust benefits upon his demand, the timing of the Trustee's awareness of the receivership may be significant. However, as this court has noted above, Paul had no right to the funds

upon demand without being qualified to receive those benefits.

9. Paul argues that as of the time of his request for payment (February 23, 1990), CenTrust was not insolvent. This court finds that argument irrelevant for the reasons stated above—i.e., Paul had no right to benefits at that time.

notice requirement was obviously created to protect the general creditors from having the Trustee distribute trust proceeds to participants at a time when the institution is insolvent (and therefore trust proceeds should be held for the benefit of the general creditors).

■■■ Even if Paul had standing to raise the notice provision, the record reflects that Edward Davies, then Trustee of the SERP, received RTC's May 3, 1990 notice letter on May 15, 1990. (See attachments to Affidavit of Kurt W. Wiershem, attached to RTC's Reply Memorandum). This Court finds as a matter of law that the notice of insolvency was promptly sent to Trustee Davies, particularly in light of the fact that there is absolutely no evidence of any prejudice suffered by Paul because of any delay in the notice.[10]

■■■ The January 12, 1990 memorandum of Robert W. McMullen referenced above does have some bearing with respect to Plaintiffs' final argument, that is, that the RTC cannot rely on the insolvency provision because it was mismanagement and unauthorized action by RTC which caused any resulting insolvency, and thus RTC violated an implied obligation of good faith in connection with the SERP agreements. RTC counters that RTC's conduct with respect to the conservatorship and/or management of Centrust, although possibly the subject of a claim by CenTrust against the RTC, is irrelevant to the issue to be determined by this court—that is—whether Paul is, or the general creditors are, currently entitled to the SERP benefits.[11] This court agrees with the RTC and rejects Plaintiffs' argument on this issue.

## RECOMMENDATION

Based upon the facts as set forth above, it is the recommendation of this court

(1) that the RTC's Motion for Summary Judgment as to Counts I, II and III of its Amended Complaint in Intervention and

RTC's Motion for Summary Judgment as to Counts I and II of its Amended Complaint in Intervention be **GRANTED**;

(2) that an order that all Trust assets must be held for CenTrust's creditors be issued; and

(3) that an order be entered that all assets of the Trust must revert to RTC for the benefit of CenTrust's general creditors be issued.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Shelby Highsmith, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

**DONE AND ORDERED** this 24th day of August, 1994, at Miami, Florida.

---

10. This court further rejects Paul's contention that the fact that the notice was not given by certified mail renders the notice ineffective. *See, e.g., Mlcoch v. Smith,* 173 A.D.2d 443, 444, 570 N.Y.S.2d 70 (N.Y.Supr.Ct.App.Div.1991); *Nafstad v. Merchant,* 303 Minn. 569, 228 N.W.2d 548, 550–51 (1975).

11. It appears that a similar "failure to liquidate assets in a commercially reasonable fashion" argument was also raised in the *Goodman* case, but was rejected by the court because the argument was not supported by the facts in that case. There was no discussion of the legal sufficiency of that "defense." Paul has not cited any further authority for his position.